**GEORGIA–PACIFIC CORPORATION, et al., Plaintiffs,**

v.

**GREAT NORTHERN NEKOOSA CORPORATION, et al., Defendants.**

**Civ. No. 89–0264–P.**

United States District Court, D. Maine.

Dec. 22, 1989.

---

**32**

Stuart J. Baskin, Kenneth M. Kramer, Robert E. Richardson, Shearman & Sterling, New York City, David A. Soley, Robert H. Stier, Jr., Bernstein, Shur, Portland, Me., for plaintiffs.

Bernard W. Nussbaum, William C. Sterling, Jr., Paul Vizcarrondo Jr., Wachtell, Lipton, New York City, Robert A. Moore, Verrill & Dana, Portland, Me., for defendants.

GENE CARTER, Chief Judge.

### ORDER DENYING PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

In this action, arising out of Georgia–Pacific's attempt to take over, by a cash tender offer, the Great Northern Nekoosa Corporation, Georgia–Pacific seeks relief declaring unlawful and enjoining certain impediments to Georgia–Pacific's offer which was commenced on October 31, 1989 and which has been twice rejected by the Great Northern Board of Directors. These allegedly unlawful impediments include Great Northern's "poison pill" stock purchase rights plan, which provides, *inter alia*, that within 90 to 120 days the corporation must hold a referendum of the shareholders on whether to accept an offer and redeem the poison pill. A special shareholders meeting has been scheduled for March 20, 1990, the 120th day after Georgia–Pacific demanded it. Before the Court now is Georgia–Pacific's Application for a Temporary Restraining Order and a Preliminary Injunction to accelerate the Great Northern shareholder referendum on Georgia–Pacific's offer to a date thirty days from demand and to require Great Northern to provide Georgia–Pacific with seventy-two hours notice prior to consummating any transaction that would materially alter the status quo. Because it has had the benefit of not only full briefing of these issues but also argument of able counsel for both parties and the nonparty shareholders, the Court will address the motion as one solely for a preliminary injunction. *See* Fed.R.Civ.P. 65.

In this circuit, in order for a plaintiff to obtain preliminary injunctive relief, the Court must find

(1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which the granting of injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Stanton by Stanton v. Brunswick School Department,* 577 F.Supp. 1560, 1567 (D.Me.1984). In considering an application for an injunction, "the Court is to bear constantly in mind that an '[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.' " *Id.* (*quoting Plain Dealer Publishing Co. v. Cleveland Type. Union #53*, 520 F.2d 1220, 1230 (6th Cir.1975). Application of these principles makes plain that Georgia–Pacific is not entitled to preliminary injunctive relief in this case.

■ The Great Northern rights plan incorporating the provision for a shareholder referendum within 90 to 120 days was put into effect a year before the Georgia–Pacific's tender offer and the instant litigation. There is no requirement that rights plans provide for such a referendum, and there has been no showing that a rights plan permitting such a referendum only after a period of 90 to 120 days is in any way

unreasonable. As Great Northern's counsel pointed out, the SEC has used similar waiting periods for presentation of proposals at annual corporation meetings. *See* SEC Rule 14a–8, 17 C.F.R. § 240.14a–8. Moreover, in the abstract the 90 to 120 day time frame is reasonable to allow time to set and publicize a record date for the meeting, to prepare proxy materials, and to allow shareholders to gain information to make an informed judgment before the meeting.

The Great Northern rights plan also authorizes the Board of Directors to schedule the special shareholders meeting before the 90 day to 120 day period specified in the rights plan. Georgia–Pacific argues that it is unreasonable[1] in this instance for the Board to adhere to the 120 period and thus seeks acceleration of the meeting. Although this may not be the most compelling case imaginable for use of a poison pill, since Georgia–Pacific is not a greenmailer, *see Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1342 (Del. 1987), and the offer is not discriminatory, *see Desert Partners, L.P. v. USG Corp.*, 686 F.Supp. 1289, 1299 (N.D.Ill.1988), there has been no showing on the specific issue raised by this motion that the Board's decision to hold the shareholders meeting 120 days after demand was unreasonable. The reasons given by Great Northern's Directors for using the pill are that they do not think the offer is high enough given the long term plans of the company and that, upon the advice of counsel, they think that the proposed takeover will result in antitrust violations. Certainly, 120 days is not a patently unreasonable amount of time for the directors to marshal and present to the shareholders the information on their position regarding the offer. This is particularly so when Maine law suggests that the Directors of a corporation, in considering the best interests of the shareholders and corporation, should also consider the interests of the company's employees, its customers and suppliers, and communities in which offices of the corporation are located. *See* 13–A M.R.S.A. § 716. Moreover, the Directors have filed suit in the District of Connecticut to test their antitrust claim and that litigation is proceeding on an expedited basis and may well be finished by the end of January. By setting the shareholders meeting 120 days from the date of demand, the Board made it far more likely that the antitrust litigation would be resolved and that the shareholders would have a sound informational basis when deciding whether to accept the tender offer.

The Court notes that in the complaint Georgia–Pacific has not challenged the purported illegality of the provision for setting the date of a special shareholders meeting under the rights plan nor sought any relief with respect thereto. The foregoing discussion, then, which sets forth the Court's position on the reasonableness of the date set for the meeting, is not technically an evaluation of the likelihood of Georgia–Pacific's success on the merits of its claims since any such evaluation is really irrelevant to what is sought in the pending motion. The Court can, however, consider the other factors necessary for the granting of a preliminary injunction.

At argument the Court specifically questioned counsel for Georgia–Pacific on the harm that would result if the shareholders' consideration of the tender offer occurs in 120 days rather than in the 30 days proposed by this application. Counsel responded that Georgia–Pacific would probably have won in the antitrust litigation and the offer will have been arbitrarily delayed. When pressed on the harm that would re-

---

1. Georgia–Pacific argues that reasonableness is the standard by which Great Northern's actions in employing the pill must be judged. *See Unocal v. Mesa Petroleum*, 493 A.2d 946, 955 (Del. 1985). Great Northern argues that the company's actions are presumptively valid under the Business Judgment Rule and that they may only be found invalid if the Board acted fraudulently or in bad faith. Although the Business Judg-ment Rule may be the more appropriate standard, *see id; Rosenthal v. Rosenthal*, 543 A.2d 348, 353 (Me.1988); *Moran v. Household International, Inc.*, 500 A.2d 1346 (Del.1985), the Court *need not decide the issue now* for it is plain that Georgia–Pacific has not shown that the Board's actions in setting the meeting date were even unreasonable.

sult from the delay, counsel stated generally that delay always hurts suitors and that the market *can* change. Counsel for the shareholders probably summarized the position most aptly when he stated that the harm in not accelerating is that "anything can happen."

Such vague speculations about the future are not adequate for the Court to find that irreparable harm will occur to Georgia–Pacific or to the shareholders if the meeting is not accelerated. Although the Court of Appeals for the First Circuit has indicated that delay can result in irreparable harm during a takeover bid, *see San Francisco Real Estate Investors v. Real Estate*, 701 F.2d 1000, 1002 (1st Cir.1983), *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 853 (1st Cir.1988), this case is significantly different from either of those cited. In *Hyde Park* the court stated "[i]t is obvious that timing is everything with tender offers, and *that such a delay would effectively kill the takeover bid in its present form." Hyde Park Partners, L.P.*, 839 F.2d at 853. In *San Francisco Real Estate Investors*, 701 F.2d 1000, 1002–3, the Court stated: "There can be no doubt that enforcement of the by-law would substantially chill, if not freeze in its tracks, any continued takeover effort. While time and money are lost, so also is diminished if not destroyed any chance of success." In this case, Georgia–Pacific has not shown that its takeover effort will be significantly affected by the delay proposed. The inevitable vagaries of the market are not adequate predictors of irreparable harm to either Georgia–Pacific or the shareholders to warrant a grant of injunctive relief.

The Court notes two further points. First, it is plain on a day-to-day basis that public discussion of the implications of the proposed takeover are evolving. This discussion is of great concern to the public, and the public's interest as well as that of the shareholders is served by letting the discussion mature. Second, harm may accrue to Great Northern and the public if the deal is rushed to completion and it is then determined that the newly formed corporation is in violation of the antitrust laws.

Since Georgia–Pacific has shown no irreparable harm from the proposed delay, and the public's, shareholders', and corporation's interests are to some extent fostered by allowing time for both public discussion and the antitrust litigation to mature, the Court will not grant the requested preliminary injunctive relief. The Court is further satisfied that it is not permitting an unjustified delay of the tender offer which might frustrate the Williams Act's policy of neutrality in contests for control, *Edgar v. MITE*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), because the shareholders will definitely have an opportunity to vote on Georgia–Pacific's proposal within a finite and relatively short period,[2] which is both in conformance with Great Northern's pre-existing rights plan and reasonable under the existing circumstances.

■ Georgia–Pacific has also sought to have the Court require Great Northern to provide notice to Georgia–Pacific before consummating any transactions which would change the status quo. Great Northern has represented to the Court that it will comply with SEC requirements concerning disclosure of negotiations and that it will serve its SEC filings contemporaneously on Georgia–Pacific. Georgia–Pacific has presented no cogent reason why it is entitled to the relief requested, and it is plain to the Court that if such a marketplace advantage were provided to Georgia–Pacific, the public interest would be disserved. Georgia–Pacific will be duly apprised of any negotiations on the part of Great Northern and can act on them as can other market players. Counsel for Georgia–Pacific assured the Court that it would immediately challenge any consummated transactions by Great Northern that it thinks are illegal. Surely, such recourse to

---

**2.** The Court notes that because of the timing of this hearing, the scheduled shareholders meet-

ing is less than 90 days away.

the court is adequate to remedy any harm that might occur.

Accordingly, it is ORDERED that Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction be and it is hereby DENIED.

SO ORDERED.