**GEORGIA–PACIFIC CORPORATION, et al., Plaintiffs,**

v.

**GREAT NORTHERN NEKOOSA CORPORATION, et al., Defendants.**

**Civ. No. 89–0264 P.**

United States District Court, D. Maine.

Feb. 8, 1990.

See also, D.C., 728 F.Supp. 807.

David A. Soley and Robert H. Stier, Jr., Portland, Me., and Stuart J. Baskin, Shearman & Sterling, New York City, for plaintiffs.

Robert A. Moore, Portland, Me., and Bernard W. Nussbaum, New York City, for defendants.

## MEMORANDUM AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

This action arises out of Georgia–Pacific's attempt to take over Great Northern Nekoosa Corporation by a cash tender offer commenced on October 31, 1989. In its complaint Georgia–Pacific seeks declaratory and injunctive relief against certain impediments to Georgia–Pacific's offer, which has been twice rejected by Great Northern's Board of Directors. These allegedly unlawful impediments include the director removal and vacancy amendments to Great Northern's articles of incorporation and by-laws. At a shareholders' meeting, specially called for March 2, 1990, Georgia–Pacific hopes to oust Great Northern's Board, which opposes the takeover, and to fill the vacancies thus created with its own candidates. Before the Court is Georgia–Pacific's Motion for Partial Summary Judgment on the grounds that the challenged amendments conflict with section 707(2) and section 707(5) respectively of the Maine Business Corporation Act [MBCA], 13–A M.R.S.A. § 101 *et seq.* This motion has been thoroughly briefed, and the Court, with the consent of Great Northern, granted Georgia–Pacific's motion to waive oral argument and to expedite decision on the motion.

Rule 56 of the Federal Rules of Civil Procedure provides that the Court shall grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court finds that there are no genuine issues of material fact pertinent to this motion and that Georgia–Pacific is entitled to judgment as a matter of law on Count III.

### The "Supermajority" Director Removal Provision

In May, 1984, Great Northern amended its articles of incorporation to include the following, so-called supermajority provision for removal of directors:

> Subject to the rights of the holders of any series of preferred stock then outstanding, any director, or the entire Board of Directors, may be removed from office at any time, but only by the affirmative vote of the holders of at least 75% of the voting power of all the shares of the Corporation entitled to vote generally in the election of directors, voting together as a single class.

Exhibit 4 to Stier Affidavit (Article of Incorporation of Great Northern Nekoosa Corporation entitled Board of Directors,

Section 1(c). Article IV, Section 2 of Great Northern's bylaws requires the same seventy-five percent vote in order to remove a director or directors.

■ The MBCA also specifically provides for removal of directors in section 707:

1. At a special meeting of shareholders called expressly for that purpose, the entire board of directors or any individual directors may be removed, with or without cause, by a vote of the shareholders as provided in this section.

2. Subject to the limitation in subsection 4, if the corporation does not have a board of directors so classified that different classes of shares elect different directors, such removal may be accomplished by the affirmative vote of ⅔ of the outstanding shares entitled to vote for directors. The articles of incorporation may provide that such removal may be accomplished by a lesser vote, but in no case by a vote of less than a majority of shares voting on the proposed removal.

13–A M.R.S.A. § 707.[1] Georgia–Pacific contends that the removal provisions in Great Northern's articles of incorporation and bylaws are void because, in requiring a seventy-five percent majority to remove directors rather than the two-thirds majority set forth in § 707, they conflict with the MBCA. The MBCA makes clear that the bylaws and amendments to articles of incorporation may not be inconsistent with the MBCA or other law. *See, e.g.,* 13–A M.R.S.A. §§ 403(1)(E)(3), 202(1)(E), 802(2)(O), and 601(1). It has also long been established in Maine that the powers of a corporation are derived from law and may not be enlarged by any act of the corporate body. *Andrews v. The Union Mutual Fire Insurance Co.,* 37 Me. 256, 260 (1854).

Great Northern argues that section 707 does not establish a mandatory ceiling for the majority required to unseat directors because it nowhere prohibits Maine corporations from adopting a higher standard. Citing this Court's recent decision on Georgia–Pacific's previous summary judgment motion, Great Northern contends that inferring such a prohibition would be improper since the MBCA is "intended to afford Maine corporations the greatest possible flexibility with its structures and procedures." Great Northern also asserts that section 611 of the MBCA expressly authorizes Maine corporations to set higher voting standards for issues presented to the shareholders and that that section is controlling.

The plain language of section 707(2) *requires* a two-thirds majority vote for removal of corporate directors. Great Northern's suggestion that the statute does not preclude the requirement of a greater majority by the articles of incorporation is clearly incorrect, for the Maine Law Court has interpreted the language of section 707 as "expressly limiting the means available to remove officers and directors." *Webber v. Webber Oil Co.,* 495 A.2d 1215, 1221 (Me.1985).[2]

■ Great Northern's argument that section 611 of the MBCA expressly permits corporations to ignore the two-thirds majority requirement in section 707 is unpersuasive. Section 611 provides:

> At the suggestion of several members of the bar, ... the *required* vote to remove a director without cause has been increased to two-thirds (⅔) from the MBCA provision of a mere majority.
>
> Despite a reluctance to permit arbitrary removal of directors in mid-term, it is felt that— if shareholders have acquired sufficient votes to command a two-thirds majority—they should be able to put in their own board of directors, as a matter of right.
>
> Comment, § 7–7, Proposed Business Corporation Act (emphasis added).

---

1. Neither subsection 4 nor the other subsections of section 707 are pertinent to this motion.

2. Each party argues that the legislative history of section 707 supports its construction of the statute. The Court need not resort to an analysis of the legislative history to understand the statute for the statute's language is not ambiguous. *State v. Edward C.,* 531 A.2d 672, 673 (Me.1987). The Court notes, however, that the comments of the drafters on section 7–7 of the Proposed Business Corporation Act, which was enacted in virtually identical form in the MBCA, reinforce the plain meaning of the statute as requiring a two-thirds majority:

1. Except to the extent that the vote of a greater number of shares or voting by classes or series of shares is required by this Act or by the articles or bylaws, at any meeting of shareholders which has been duly called, or notice and call of which has been unanimously waived, and at which a quorum is present:

A. Any corporate action shall be authorized by a majority of the votes cast at the meeting by the holders of shares entitled to vote on the subject matter;

. . .

. . . .

2. The articles or bylaws may require a vote greater than a majority, may require a unanimous vote, and may specify that the stipulated percentage shall be determined with reference to the total shares entitled to vote, either as to specific issues or as to all issues which may come before the shareholders.

13–A M.R.S.A. § 611.

Section 611 establishes that a majority vote will authorize any corporate action, "[e]xcept to the extent that the vote of a greater number of shares ... is required by this Act or by the articles or bylaws...." It is clear to the Court that in framing section 611, the drafters meant to defer to section 707 and other sections like it which specify increased voting requirements for certain corporate acts. The general rule stated in section 611, referring as it does, in the alternative, to voting requirements set forth in the Act or the articles, cannot be read as providing license for corporations to bypass the Act's specific provisions when drafting their articles of incorporation and bylaws. The fact that the articles or bylaws may sometimes require a vote greater than a majority does not, when both the articles and the Act set voting requirements, establish the relationship between such provisions.[3] As discussed previously, however, the Act makes

it very clear in other sections that the bylaws and articles of incorporation may not be inconsistent with the Act.

Even if section 611 could be read as conflicting with section 707, Maine rules of statutory construction require that specific statutory provisions take precedence over general ones. *In re McLoon Oil Co.*, 565 A.2d 997, 1008 (Me.1989); *Beaulieu v. City of Lewiston*, 440 A.2d 334, 345 (Me.1982). Section 611 provides the general voting requirements for corporate acts, but section 707 specifically addresses the voting requirements for removal of directors. Therefore, section 611 must yield to section 707 in circumstances dealing with the removal of directors.

*Vacancy Provisions*

■ The Great Northern articles of incorporation and bylaws also include sections providing that any vacancies in the Board of Directors "shall only be filled by a majority vote of the directors then in office though less than a quorum." Ex. 4 to Stier Affidavit (Article of Incorporation entitled Board of Directors, Section 1(b)); Great Northern Nekoosa Corporation By-Laws, Art. IV, § 1. The MBCA has one section dealing generally with vacancies in the board of directors and another dealing specifically with the filling of vacancies in the board when the directors have been removed at a shareholders' meeting. 13–A M.R.S.A. §§ 706(1)(B), 707(5). Section 706(1)(B) states: "Unless the articles of incorporation or the bylaws reserve to the shareholders the right to fill vacancies, any other vacancy, however occurring, in the board of directors may be filled by a majority of the remaining directors or by a sole remaining director." 13–A M.R.S.A. § 706(1)(B). The section purports to cover vacancies, "however occurring," but the next section of the statute expressly covers

---

**3.** Great Northern asserts that section 611 "makes it clear that (i) the requisite shareholder vote required for a particular matter is the *highest* vote required by the MBCA or the corporation and that (ii) a corporation may establish a *higher* voting standard than is otherwise established by the MBCA." Defendant's Memorandum of Law in Opposition to Georgia–Pacific's

Motion at 9. There is no basis for this construction of the statute. Nowhere does it say that if there is a conflict between the articles and the Act, the one requiring the highest vote applies, and nowhere is there any abrogation of the oft-repeated rule that the articles and bylaws may not be inconsistent with the Act.

the filling of vacancies created by removal of directors at a shareholders' meeting: "If any or all directors are removed at such meeting of the shareholders, new directors may be elected at the same meeting without express notice being given of such election." 13–A M.R.S.A. § 707(5). As previously discussed, under Maine rules of statutory construction, general statutory provisions usually yield to specific ones. *Beaulieu v. City of Lewiston*, 440 A.2d at 345. Thus, election of new directors in cases of removal by the shareholders is governed by section 707(5).

Section 707(5) permits the shareholders to elect new directors at the meeting. The provision in Great Northern's articles and bylaws mandating that vacancies in the board of directors resulting from removal from office be filled by a majority vote of the directors then in office is plainly inconsistent with the section 707(5). Unlike section 706(1)(B), section 707(5) does not state that a contrary provision in the articles of incorporation or bylaws will control. Therefore, the vacancy-filling provisions of Great Northern's articles of incorporation and bylaws are void to the extent that they attempt to mandate an election procedure in cases of removal. *See* 13–A M.R.S.A. §§ 403(1)(E)(3); 802(1) and (2)(O); 601(1); *Andrews v. The Union Mutual Fire Insurance Co*, 37 Me. at 60.

██ Section 707(5) of the MBCA expressly permits the election of new directors at a shareholders' meeting without prior notice, when the election is occasioned by the removal of directors at the same shareholders' meeting. To the extent that Article II, Section 9 of Great Northern's By–Laws attempts to impose a 90–day notice requirement for nomination of director candidates after removal of the directors at a meeting of the shareholders, it, too, is inconsistent with the Act and, therefore, void.

Accordingly, it is ordered that Georgia–Pacific's Motion for Partial Summary Judgment be, and it is hereby, GRANTED as to Count III of the Complaint.

The Court hereby DECLARES unlawful and void Section 1(c) of Great Northern Nekoosa Corporation's Article of Incorpo-ration entitled Board of Directors and Article IV, Section 2 of Great Northern Nekoosa Corporation's bylaws, both of which require a vote of 75% (seventy-five percent) of the shares in order to remove one or all of the board of directors of the corporation.

The Court also hereby DECLARES unlawful and void Section 1(b) of Great Northern Nekoosa Corporation's Article of Incorporation entitled Board of Directors and Article IV, Section 1 of Great Northern Nekoosa Corporation's By–Laws to the extent that those sections mandate that vacancies in the Board of Directors resulting from the previous directors' removal from office at a meeting of the shareholders shall be filled by a majority vote of the directors then in office.

Finally, the Court hereby DECLARES that Article II, Section 9 of Great Northern's bylaws is unlawful and void to the extent that it prescribes a 90 (ninety) day notice period for nominations of candidates to the board of directors where the vacancy for which the new director is proposed has been created by removal of previous directors at a meeting of the shareholders.

SO ORDERED.