USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ Nos. 92-2219 92-2274 BTZ, INC., Plaintiff, Appellant, v. GREAT NORTHERN NEKOOSA CORP., ET AL., Defendants, Appellees.  ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________  ____________________ Torruella, Selya and Cyr, Circuit Judges. ______________  ____________________ David L. Lee, with whom Law Offices of Frederic F. Brace, Jr. was ____________ _____________________________________ on brief for appellant. Peter J. Brann, Assistant Attorney General, with whom Michael E. _______________ __________ Carpenter, Attorney General, and Thomas D. Warren, Director, _________ ___________________ Litigation Unit, were on brief for State of Maine, Amicus. Tami L. Brown for appellee Great Northern Nekoosa Corp.  _____________  ____________________ February 16, 1995  ____________________ CYR, Circuit Judge. BTZ, Inc., a former shareholder in CYR, Circuit Judge. _____________ Great Northern Nekoosa Corporation ("Great Northern"), appeals a district court order disallowing its application for an award of attorney fees against Great Northern. The fee application was predicated on the theory that the lawsuit BTZ brought against Great Northern in the United States District Court for the District of Maine caused Great Northern to capitulate to a hostile takeover by Georgia Pacific Corporation ("GPC") which resulted in substantial benefit to other Great Northern share- holders. We affirm. I I BACKGROUND1 BACKGROUND __________ In October 1989, GPC made an unsolicited tender to acquire Great Northern. The Board of Directors of Great Northern ("Board") balked. GPC commenced suit in Maine federal district court, seeking a judicial declaration that the Board's anti- takeover defenses violated state and federal law, as well as the Board's fiduciary duty to Great Northern shareholders. Several Great Northern shareholders [hereinafter: "plaintiffs"], includ- ing appellant BTZ, brought derivative "class action" suits  ____________________ 1We set forth only the facts essential to our holding. Greater factual detail is provided in other reported decisions. See Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518 (1st ___ __________ ___________________________ Cir. 1991); Weinberger v. Great Northern Nekoosa Corp., 801 F. __________ ____________________________ Supp. 804 (D. Me. 1992); Georgia-Pacific Corp. v. Great Northern _____________________ ______________ Nekoosa Corp., 731 F. Supp. 38 (D. Me. 1990); Georgia-Pacific ____________ _______________ Corp. v. Great Northern Nekoosa Corp., 727 F. Supp. 31 (D. Me. ____ ____________________________ 1989). 2 against the Board in Maine federal district court. The class action suits were consolidated and the State of Maine intervened to defend its anti-takeover statute from constitutional chal- lenge. The Board concurrently opened a second line of defense by instituting an antitrust action against GPC in Connecticut federal district court. Plaintiffs' counsel took no part in the __ ____ Connecticut action. On February 12, 1990, GPC announced its divestiture of all paper company holdings, thereby effectively mooting the Board's antitrust action. One week later, the Board ___ ____ _____ capitulated and accepted GPC's tender offer. See Weinberger v. ___ __________ Great Northern Nekoosa Corp., 925 F.2d 518, 521 (1991). ___________________________ Concerned that the plaintiffs in the Maine anti-take- over suits might impede the GPC-Great Northern settlement and merger, GPC entered into a "clear sailing" agreement with plain- tiffs: plaintiffs would dismiss their federal actions in Maine and "take no steps to attach any part of the funds to be paid to [Great Northern] shareholders pursuant to the upcoming tender offer"; GPC-Great Northern, in turn, would "pay the plaintiffs' attorneys' fees and expenses [up to $2 million,] as shall be awarded by the United States District Court for the District of Maine." Id. at 518 n.1, 521.  ___ The federal district court in Maine ultimately denied plaintiffs' fee applications, however, ruling that their attor- neys' services were not a significant precipitating "cause" of the GPC-Great Northern merger. Rather, their legal services 3 merely mimicked GPC's legal efforts in the Maine lawsuits, and played no role whatever in the truly decisive takeover skirmish __ ____ the Connecticut antitrust litigation. Weinberger v. Great __________ _____ Northern Nekoosa Corp., 801 F.Supp. 804, 811 (D. Me. 1992). BTZ ______________________ appeals.2 II II DISCUSSION DISCUSSION __________ A. The American Rule A. The American Rule _________________ Under the American Rule, absent a specific statutory authorization or contractual agreement to the contrary, litigants are responsible for their own attorney fees. See In re San Juan ___ _______________ Dupont Plaza Hotel Fire Litig., 982 F.2d 603, 606 (1st Cir. _________________________________ 1992). One notable exception to the American Rule obtains in so-  ____________________ 2The State of Maine, as amicus curiae, suggests that we may lack appellate jurisdiction because the "clear sailing" agreement obligates GPC-Great Northern, not BTZ, to pay fees to BTZ's ___________________ attorneys. Thus, it says, BTZ the only appellant named in the ____ notice of appeal lacks either standing to appeal from a denial of the fee application, see United States v. AVX, 962 F.2d 108, ___ _____________ ___ 112-13 (1st Cir. 1993), or a demonstrable stake in the outcome of the appeal. Although dismissal on jurisdictional grounds might be warranted, the matter is not without difficulty and there is no circuit precedent directly in point. BTZ signed no enforceable fee agreement with its attorneys, but the "clear sailing" agree- ment, qua contract, might arguably afford BTZ a status analogous ___ to a "prevailing party" in a statutory fee-shifting case. Cf. ___ Pontarelli v. Stone, 978 F.2d 773, 775 (1st Cir. 1992) (since __________ _____ statute specifically authorizes fees to "prevailing party," prevailing party's attorney has no independent standing to appeal ________ from grant or denial of fee award); Benitez v. Collazo-Collazo, _______ _______________ 888 F.2d 930, 933 (1st Cir. 1989) (same). We therefore bypass the jurisdictional issue and turn to the merits. See FDIC v. Bay ___ ____ ___ Street Dev. Corp., 32 F.3d 636, 639 n.4 (1st Cir. 1994).  _________________ 4 called "common benefit" cases, where a plaintiff's suit is prematurely mooted but nonetheless results in a "substantial [pecuniary or nonpecuniary] benefit" to a larger class [hereinaf- ter: "beneficiaries"]. In these common benefit cases, a court may invoke its equitable jurisdiction to assess attorney fees against beneficiaries of the legal services; and, where the beneficiaries are corporate shareholders, their assessment may be imposed upon the corporate defendant. See, e.g., Reiser v. Del ___ ____ ______ ___ Monte Properties Co., 605 F.2d 1135, 1137-38 (9th Cir. 1979) _____________________ (citing cases). BTZ insists that its legal services fit squarely within the "common benefit" exception to the American Rule, since the GPC takeover enhanced the pecuniary interests of all Great Northern shareholders. The threshold question, of course, is whether the BTZ lawsuit in Maine federal district court actually caused the Board to capitulate to the GPC takeover, thereby ______ contributing substantially to the per-share price increase in Great Northern shares. The district court rejected BTZ's claim on two fronts. B. Causation B. Causation _________ First, the court found insufficient evidence that BTZ's legal services caused the Board to capitulate to the GPC take- over. As we have noted, "causation questions are grist for the factfinder's mill . . . ," Dedham Water Co. v. Cumberland Farms _______________ ________________ Dairy, Inc., 972 F.2d 453, 457 (1st Cir. 1992) (citing Peckham v. __________ _______ Continental Cas. Ins. Co., 895 F.2d 830, 837 (1st Cir. 1990)), _________________________ 5 which we review under the "clear error" standard, see ICC v. ___ ___ Holmes Transp., Inc., 983 F.2d 1122, 1129 (1st Cir. 1993) (noting ____________________ that "clear error" leaves reviewing court with the "definite and firm conviction that a mistake has been committed"). Cf. Lipsett __ _______ v. Blanco, 975 F.2d 934, 937, 941 (1st Cir. 1992) (according ______ deference to trial court's "front row seat" determination as to whether legal services contributed to favorable outcome in underlying litigation) (citation omitted). The district court finding that the efforts of BTZ's counsel were neither a substantial nor a material factor in GPC's "decision to increase its bid or in Great Northern's decision to auction itself," Weinberger, 801 F. Supp. at 809, is amply __________ supported by the record. The withdrawal of the Connecticut antitrust action and the defeat of Great Northern's anti-takeover mechanisms in the Maine litigation were the decisive factors contributing to the GPC takeover. See id. at 811 & n.11. BTZ's ___ ___ counsel took no part in the pivotal Connecticut litigation. Id. __ _______ ___ at 809. And to the limited extent that BTZ's counsel participat- ed in the Maine litigation, they did little more than track GPC's filings and audit depositions conducted by GPC. Id. at 808-811. __ The district court's robust skepticism of the benefits contributed by BTZ's counsel is especially appropriate given the increasing concerns that redundant or peripheral legal services may parasitize the litigation efforts of lead counsel, yet command a substantial fee. Insofar as lead counsel reasonably perceive a consequent dilution of the limited resources available 6 for legal services, allowances for phantom legal services frus- trate the adversary process and undermine the congressional policy favoring private enforcement of the securities laws.3 C. Burden of Proof C. Burden of Proof _______________ The district court also rejected BTZ's fallback attempt to realign the burden of proof on the issue of causation. We review its legal ruling de novo. Liberty Mut. Ins. Co. v. __ ____ ______________________ Commercial Union Ins. Co., 978 F.2d 750, 757 (1st Cir. 1992).  ________________________ Under Delaware law, a fee award will be denied in a common benefit case only if the party opposing it proves that the _____ ________ applicant's legal services did not contribute to the favorable ___ outcome in the underlying takeover litigation. Compare Allied _______ ______ Artists Pictures Corp. v. Baron, 413 A.2d 876 (Del. 1980); ______________________ _____ Rosenthal v. Burry Biscuit Co., 209 A.2d 459 (Del. Chan. 1949)4 _________ _________________ with Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("[T]he fee ____ _______ _________  ____________________ 3See generally John C. Coffee, Jr., Rescuing the Private ___ _________ ____________________ Attorney General: Why the Model of the Lawyer as Bounty Hunter is _________________________________________________________________ Not Working, 42 Md. L. Rev. 215, 249 (1983); John C. Coffee, Jr., ___________ Understanding the Plaintiff's Attorney: The Implications of _________________________________________________________________ Economic Theory for Private Enforcement of Law Through Class and _________________________________________________________________ Derivative Actions, 86 Colum. L. Rev. 669 (1986); Jonathan R. ___________________ Macey & Geoffrey P. Miller, The Plaintiffs' Attorney's Role in ___________________________________ Class Action and Derivative Litigation: Economic Analysis and _________________________________________________________________ Recommendations for Reform, 58 U. Chi. L. Rev. 1, 68 (1991).  __________________________ 4The Delaware Chancery Court explained that "it is reason- able to impose on the defendants the burden of showing that the [benefit] was not in any way occasioned by the existence of the lawsuit," and that, even were the defendant corporation to prove that the fee applicant's suit in no way contributed to the benefit conferred, "the [fee applicant's] attorney would still be entitled to a fee if it is shown that the cause of action was meritorious." Rosenthal, 209 A.2d at 461. The Delaware Supreme _________ Court later adopted the Rosenthal reasoning. See Allied Artists _________ ___ ______________ Pictures Corp., 413 A.2d 876.  ______________ 7 applicant bears the burden of establishing entitlement to a [fee] award."); Nadeau v. Helgemoe, 581 F.2d 275, 281 (1st Cir. 1978) ______ ________ (fee applicant has burden to prove suit served as "catalyst"); Koppel v. Wien, 743 F.2d 129, 135 (2d Cir. 1984) (same); 1 Mary ______ ____ F. Derfner & Arthur D. Wolf, Court Awarded Attorney Fees  _____________________________ 9.02[4][c], at 9-24.6 (1991). The district court correctly interpreted our decision in Weinberger, 925 F.2d at 522 n.6, to indicate that the BTZ fee __________ application does not fit squarely within the common benefit exception to the American Rule, see Weinberger, 801 F.Supp. at ___ __________ 807, since "[BTZ] abjured a claim for fees under the common benefit doctrine[,]" Weinberger, 925 F.2d at 524, both by negoti- __________ ____ ating the "clear sailing" agreement, which neutralized Great Northern's capacity to challenge a fee award, and by relying on ___ the "clear sailing" agreement as the basis for its alleged fee entitlement. In contrast, neither Rosenthal nor Allied Artists _________ ______________ involved a "clear sailing" agreement. Their realignment of the burden of proof was premised on the relative capacities of fee __________ applicants and fee opponents to establish the "causation" ele- ment. Aside from BTZ, three entities had cognizable interests in the BTZ class action: Great Northern, GPC, and the State of Maine. None was better positioned than BTZ to establish what caused Great Northern to succumb to the GPC takeover bid. First, following its merger with GPC, Great Northern no longer existed as an independent legal entity. Second, immobilized as a fee 8 opponent by the terms of the "clear sailing agreement," GPC could not attempt to rebut a presumption of substantial benefit without breaching its agreement. Nor, finally, has there been any showing that the State of Maine, intervenor below and amicus on appeal even assuming it were able and inclined to oppose the BTZ fee application on policy grounds was better situated than BTZ to establish causation. There simply is nothing in the record to suggest that the State of Maine, aligned by happen- stance with Great Northern below, was privy to its inner workings or litigation strategy during the decisive stages of the takeover battle. Thus, the State of Maine likewise was not the "well- informed" fee opponent whose presence would warrant the burden shifting urged by BTZ. Contractual fee shifting in class action suits impinges on traditional judicial protocols for scrutinizing attorney-fee allowances, by increasing the potential for conflicts of inter- est. See id. at 524-25. Consequently, a rebuttable presumption ___ ___ should not be endorsed in the context of a "clear sailing" agreement unless the court is well satisfied that "the advantages of the adversary process" are not blunted by undermining the parties' incentives to proffer relevant evidence on causation. Id. The district court prudently ruled out any rebuttable ___ presumption in the instant case. As the district court findings and conclusions are fully supported, its disallowance of the fee application must be affirmed. 9 The district court order is affirmed. Costs to appel- _______________________________________________________ lees.  ____ 10